IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|   |   |
|---|---|
| KINGTOM ALUMINIO SRL, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 22-00072 |

## COMPLAINT

1. Plaintiff Kingtom Aluminio SRL ("Plaintiff" or "Kingtom") by and through its counsel hereby allege and state as follows:

## JURISDICTION

2. Plaintiff brings this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest certain aspects of the final results of the administrative review of the antidumping duty ("AD") order on certain aluminum extrusions from the People's Republic of China, Case No. A-570-967, issued by the International Trade Administration of the United States Department of Commerce ("Commerce"). *Aluminum Extrusions From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2019-2020*, 87 Fed. Reg. 7,098 (Dep't Commerce Feb. 8, 2022) and accompanying Issues and Decision Memorandum ("*Final Results*"). The challenged review covered entries from May 2019 through April 2020.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

14197285–1

1

## PARTIES AND STANDING

4. Plaintiff is a manufacturer in the Dominican Republic who exported aluminum extrusions to the United States during the period of review. Therefore, Plaintiff is an interested party within the meaning of sections 771(9)(A) and 516A(f)(3) of the Act, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3). Plaintiff was a party to the administrative proceeding that led to the determination that is being challenged herein, as Plaintiff was selected by Commerce as mandatory respondent, responded to all of Commerce's questionnaires during the course of the proceeding, and submitted a case brief to Commerce. Accordingly, Plaintiff has standing pursuant to 28 U.S.C. § 2631(c) to commence this action.

## TIMELINESS OF THE ACTION

5. On February 8, 2022, Commerce published *Final Results* in the Federal Register. 87 Fed. Reg. at 7,089. Plaintiff timely filed a summons on March 9, 2022 within 30 days after the publication of *Final Results* pursuant to 19 U.S.C. § 1516a. Plaintiff timely files this Complaint within thirty days of the filing of the Summons, in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of this Court.

## STATEMENT OF FACTS

6. On February 2, 2020, U.S. Customs and Border Protection ("CBP") notified certain importers of Kingtom's products that it had initiated an investigation pursuant to the Enforce and Protect Act ("EAPA") to determine whether the importers evaded antidumping duties imposed pursuant to the orders covering aluminum extrusions from the People's Republic of China ("EAPA Case No. 7348"). *See* Letter from the Aluminum Extrusions Fair Trade Committee to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China: Comments on Kingtom's Section A Questionnaire Response," at Attachment 1 (Jan. 7, 2021) (on

record of Case No. A-570-967) ("Petitioner's Section A Comments").  At the time it notified the importers of EAPA Case No. 7348 on February 2, 2021, without notice to Kingtom, and without providing Kingtom or the importers an opportunity to respond to allegations of evasion, CBP applied 86.01 percent antidumping duties retroactively on all unliquidated entries, changing them from type 1 to type 3, and required 86.01 percent antidumping duty cash deposits on all prospective entries of Kingtom's aluminum extrusions by the importers in that investigation.  *Id.* Prior to February 2, 2020, Kingtom had no notice of any EAPA investigation regarding Kingtom's products and had no reason to have entries of its aluminum extrusions be declared as type 3 subject merchandise.  Also, at the time, there had been no determinations that any Kingtom aluminum extrusions were transshipped from China.  CBP requested information from Kingtom in EAPA Case No. 7348, but Kingtom was not permitted to submit voluntary factual information or written arguments in that case because, unlike the importers under investigation, Kingtom was not a "party to the investigation."  *Id* at 17.; *see also* 19 C.F.R. § 165.1 (defining "parties to the {EAPA} investigation").

       7.       On May 4, 2020, CBP notified certain other importers that it had initiated another EAPA investigation ("EAPA Case No. 7423") into those importers of Kingtom's aluminum extrusions, and applied antidumping duties to all such entries by the importers without any notice to Kingtom or prior notice the importers.  *See* Letter from the Aluminum Extrusions Fair Trade Committee to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China: Comments on Kingtom's Non-Market Economy Producer Status," at Exhibit 1 (May 5, 2021) (on record of Case No. A-570-967) ("Petitioner's NME Comments").  No information was requested from Kingtom in EAPA Case No. 7423, and Kingtom was not permitted to submit any factual information or written arguments on the record of that case because, unlike the

investigated importers, it was not a "party to the investigation." *See id.*

8. Because CBP found that a reasonable suspicion existed that Kingtom's merchandise was covered merchandise subject to the antidumping duty order on *Aluminum Extrusions from China*, Kingtom requested that Commerce conduct an administrative review for products exported by Kingtom on May 29, 2020. *See* Letter from Sandler, Travis and Rosenberg, P.A. to Sec'y Commerce, "Aluminum Extrusions From the People's Republic of China, A-570-967 Request for Administrative Review" (May 29, 2020) ("Kingtom AD Review Request"). In its request for administrative review, Kingtom noted that it refutes the alleged evasion and requested that Commerce postpone the review of Kingtom until a final decision had been made by CBP in the EAPA investigation. *Id.*

9. On July 10, 2020, Commerce initiated the 2019-2020 administrative review of the antidumping duty order on aluminum extrusions from the People's Republic of China. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 41,540 (Dep't Commerce July 10, 2020) ("*Initiation Notice*"). In its *Initiation Notice*, Commerce noted its intent to select mandatory respondents based on volume data contained in quantity and value ("Q&V") questionnaires. *Id.* at 41,541.

10. On August 10, 2020, Kingtom submitted a certification that it did not have entries, exports, or sales of subject merchandise during the period of review, and requested that Commerce rescind the administrative review of Kingtom. Letter from Sandler, Travis and Rosenberg, P.A. to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China: Certification of No Sales, Shipments, or Entries" (Aug. 10, 2020) (on record of Case No. A-570-967) ("Kingtom's No-Shipment Certification"). At the time of Kingtom's No-Shipment

4

Certification, there was no determination that Kingtom had transshipped any Chinese-origin aluminum extrusions to the United States.

11. On August 14, 2020, Kingtom voluntarily submitted the quantity and value of the aluminum extrusions that it produced in and exported from the Dominican Republic in response to Commerce's Q&V questionnaire. Letter from Sandler, Travis and Rosenberg, P.A. to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China: Quantity and Value Questionnaire," Attachment 1 (Aug. 14, 2020) (on record of Case No. A-570-967) ("Q&V Response"). The Q&V information that Kingtom reported covered all of Kingtom's sales to the United States, not just those subject to EAPA investigations. Importantly, Kingtom noted in its Q&V Response that it was reporting merchandise that it "manufactured and exported from the Dominican Republic." *Id.* Also, Kingtom again expressly refuted "all allegations that its merchandise is subject merchandise from China," but noted that it "is providing the Department of Commerce with this {Q&V} information to ensure compliance to the best of its abilities" because it is an exporter and producer of aluminum extrusions "that may be subject to this antidumping order" as it is "currently subject to ongoing investigations by U.S. Customs and Border Protection regarding allegations of evasion." *Id.* at 2. At the time of Kingtom's AD Q&V Response, there had been no determination that Kingtom had transshipped any Chinese-origin aluminum extrusions to the United States.

12. On August 17, 2020, Kingtom submitted a separate rate application. Letter from Sandler, Travis and Rosenberg, P.A. to Sec'y Commerce, "Aluminum Extrusions from People's Republic of China: Separate Rate Application" (Aug. 17, 2020) (on record of Case No. A-570-967). In its separate rate application, Kingtom substantiated that it exports aluminum extrusions from the Dominican Republic by providing a certification from the Dominican customs authority

5

and sample export documentation.  *See* Kingtom's Separate Rate Application at Exhibit 10, Exhibit 11.

13. On October 26, 2020, Commerce selected Kingtom as the sole mandatory respondent for the administrative review.  Memorandum from Mark Flessner, Int'l Trade Compliance Analyst for Antidumping and Countervailing Duty Operations Office VI to Dana S. Mermelstein, Director of Antidumping and Countervailing Duty Operations Office VI, "Aluminum Extrusions from the People's Republic of China 2019-2020 Administrative Review: Identification of Mandatory Respondent," at 4 (Dep't Commerce Oct. 26, 2020) (on record of Case No. A-570-967).

14. On November 2, 2020, CBP issued its initial "Determination as to Evasion" in EAPA Case No. 7348.  *See* Petitioner's Section A Comments at Attachment 1.  CBP found that record evidence supported that Kingtom produces aluminum extrusions in the Dominican Republic.  *Id*. at Attachment 1 at 17.  In its determination, CBP cited absolutely no evidence that any aluminum extrusion that Kingtom exported originated in China – bills of lading, certificates of origin, import data, or otherwise.  *Id.*  Rather, CBP found that differences between Kingtom's EAPA Case No. 7348 responses and the responses provided by the importers hindered CBP's ability to analyze Kingtom's operations.  *Id.*  Accordingly, CBP selected facts available with an adverse inference to determine that Kingtom transshipped commingled Chinese-origin aluminum extrusions to the United States, and thus found that the importers of its extrusions evaded paying duties.  *Id.*  The affirmative determination of evasion in EAPA Case No. 7348 was limited to the importers under investigation in that case, and no entries of Kingtom's aluminum extrusions by other importers.  *Id.* ("CBP determines that substantial evidence exists demonstrating that the aluminum extrusions entered by the Importers during the POI were transshipped Chinese-origin

6

aluminum extrusions."). Kingtom and the importers dispute the EAPA Case No. 7348 Determination as to Evasion and CBP's characterization of the record in that case. *See* Brief of Plaintiff-Intervenor Kingtom Aluminio S.R.L. in Support of Motion for Judgment on the Agency Record at 11-37, *Global Aluminum Distributor LLC v. United States*, No. 21-198 (Ct. Int'l Trade filed Feb. 14, 2022). Those issues are currently before this Court. *Id.*

15. Commerce issued an initial questionnaire to Kingtom on November 4, 2020. Kingtom timely submitted its response to Section A of the initial questionnaire on December 10, 2020, and its responses to Sections C and D on December 31, 2020. *See* Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China, Case No. A-570-967: Section A Questionnaire Response" (Dec. 10, 2020); Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China, Case No. A-570-967: Sections C-D Questionnaire Response" (Dec. 31, 2020) ("Kingtom's Section C-D Response"). In its Section C response, Kingtom reported all of its sales of aluminum extrusions to the United States, including the importers from EAPA Case No. 7348 and 7423, as well as all of its other sales during the period of review. *See* Kingtom's Section C-D Response at Exhibit C-7. In its response, Kingtom stated:

> {Kingtom} *manufactured the aluminum extrusions in the Dominican Republic* ("DR") and exported the extrusions directly to the United States as export price ("EP") sales. Because production of the aluminum extrusions took place at Kingtom's factory in the DR from materials primarily from the DR and other market-economy countries, and very little material inputs sourced from China, Kingtom *contends that its exports of aluminum extrusions are not subject to the order on aluminum extrusions from China* and this administrative review is misplaced. Nevertheless, Kingtom provides the information requested by the Department, to the best of its ability, in response to the Department's questionnaire.

*Id.* at C-1 (emphasis added).

16. The Aluminum Extrusions Fair Trade Committee ("Petitioner") submitted

7

comments on Kingtom's Sections C-D initial questionnaire response on January 21, 2021.  *See* Letter from the Aluminum Extrusions Fair Trade Committee to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China: Comments on Kingtom's Sections C-D Questionnaire Responses" (January 21, 2021).  Petitioner argued that the EAPA cases demonstrate that the origin of Kingtom's merchandise is China, not the Dominican Republic.  *Id.* at 3-4.

17. Kingtom responded to Petitioner's comments on January 28, 2021.  *See* Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China, Case No. A-570-967:  Response to Petitioner's Comments on Kingtom's Section C-D Questionnaire Response" (January 28, 2021).  Kingtom argued that the EAPA determination cites no affirmative evidence that any aluminum extrusion that Kingtom exported originated in China.  *Id.* at 3-4.  Kingtom also noted that as a result of the EAPA interim measures, pursuant to which CBP unilaterally changed certain entries from type 1 entries from the Dominican Republic to type 3 entries from China, the CBP data on the record of the administrative review "is not a reliable indicator of the country of origin of Kingtom's entries." *Id.* at 6.  Commerce did not issue any supplemental questionnaire to Kingtom in this proceeding.

18. Also on January 28, 2021, CBP issued its determination in EAPA Case No. 7423.  Again, CBP found that "evidence on the record shows that { } it was possible for Kingtom to produce aluminum extrusions in the Dominican Republic."  Petitioner's NME Comments at Exhibit 1 at 17.  CBP based the EAPA Case No. 7423 determination on the prior EAPA Case No. 7348 determination, and found that Kingtom transshipped commingled Chinese-origin aluminum extrusions to the investigated importers.  *Id*.  Again, CBP cited no affirmative

8

evidence that Kingtom's aluminum extrusions were Chinese-origin. *Id.* The holding of EAPA Case No. 7423 is limited to the investigated importers. *Id.* ("CBP determines that substantial evidence exists demonstrating that the aluminum extrusions entered by the Importers during the POI were transshipped Chinese-origin aluminum extrusions.").

19. On January 28, 2021, Commerce requested comments on surrogate country selection and surrogate values. *See* Letter from Erin Kearney, Program Manager of AD/CVD Operations, Office VI to All Interested Parties, "Aluminum Extrusions from the People's Republic of China, 2019-20: Request for Economic Development, Surrogate Country and Surrogate Value Comments and Information" (Dep't Commerce Jan. 28, 2021) (on record of Case No. A-570-967). Kingtom submitted comments on the List of Countries at the Same Level of Economic Development on Feb. 4, 2021. *See* Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China, Case No. A-570-967: Kingtom Comments on the List of Countries at the Same Level of Economic Development" (Feb. 4, 2021). In its comments on the List of Countries at the Same Level of Economic Development, Kingtom again explained that it "does not export merchandise from a nonmarket economy. Kingtom maintains and the record demonstrates that Kingtom exports its products from the Dominican Republic, a market economy country." *Id.* at 2. Nevertheless, Kingtom provided the requested surrogate value information to Commerce on February 4 and March 5, 2021. *See* Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China, Case No. A-570-967: Kingtom Surrogate Country Comments" (Feb. 9, 2021); Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China, Case No. A-570-967: Kingtom Surrogate Value Comments" (March 5, 2021) ("Kingtom's Surrogate Value

Comments"). In its surrogate value comments, Kingtom reiterated that:

> First, Kingtom does not export merchandise from a nonmarket economy. The record demonstrates that Kingtom is a market economy company operating and exporting from the Dominican Republic, a market economy country. Second, Kingtom's merchandise is not subject merchandise, i.e., *not subject to the aluminum extrusion antidumping order on China*. The record of this investigation demonstrates that Kingtom produced its aluminum extrusions in the Dominican Republic.

Kingtom's Surrogate Value Comments at 2 (emphasis added).

20. In its comments on surrogate country selection, Petitioner argued that Commerce should "choose a surrogate country that is similarly situated" to the Dominican Republic. *See* Letter from the Aluminum Extrusions Fair Trade Committee to Acting Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China: Comments on Surrogate Country Selection," at 4 (Feb. 9, 2021) (on record of Case No. A-570-967). In rebuttal, Kingtom noted that Petitioner's request for Commerce to select a country "similar situated" to the Dominican Republic acknowledged that Kingtom actually produces aluminum extrusions in the Dominican Republic and not China. *See* Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China, Case No. A-570-967: Kingtom Surrogate Country Rebuttal Comments," at 3 (Feb. 19, 2021).

21. On May 10, 2021, CBP notified Kingtom of yet another EAPA investigation into imports of Kingtom's aluminum extrusions. *See* Letter from Brian M. Hoxie, Director of the Enforcement Operations Division to the Parties to the Investigation to the Parties to the Investigation, "Notice of Initiation of Investigation and Interim Measures – EAPA Case 7550" (May 10, 2021). CBP based its allegedly reasonable suspicion explicitly and primarily on its prior findings in EAPA Case No. 7348 and EAPA Case No. 7423, *id.* at 7-8, but again cited no affirmative evidence that any of Kingtom's aluminum extrusions are Chinese-origin.

22. On June 8, 2021, Kingtom requested that Commerce issue a scope ruling as to

10

whether the aluminum extrusions that Kingtom produces in and exports from the Dominican Republic were subject to the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China.  *See* Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China, Case Nos. A-570-967 and C-570-968: Kingtom Scope Ruling Request" (June 8, 2021).  In its scope ruling request, Kingtom submitted a complete certified list of its imports into the Dominican Republic free trade zone where it is located for the calendar years 2019 and 2020, which covers the period of review.  *Id.* at Exhibit 3.  The Dominican Republic customs authority itself compiled the list and certified its accuracy and completeness.  *Id.*  The customs data demonstrates that Kingtom did not import any aluminum extrusions from any other country.  *Id.* at 11, 15.  Importantly, Kingtom expressly asked Commerce to conduct the scope inquiry in conjunction with the ongoing administrative review, and reconciled the data submitted in the scope request to the cost reconciliation that it provided in its section D initial questionnaire response.  *Id.* at 2, Exhibit 11.

23. On July 30, 2021, Commerce determined that the EAPA determinations are "conclusive" as to Kingtom's entries "in the context of the administrative review."  *See* Memorandum from Mark Flessner, Case Analyst, to The File, "Administrative Review of the Antidumping Duty Order on Aluminum Extrusions from the People's Republic of China, 2019-2020: Placement of Scope Initiation Deferral Letter on the Record" (Dep't Commerce July 30, 2021).  Therefore, Commerce "deferred initiation of th{e} scope inquiry until such time as there are entries not subject to the EAPA proceedings or until the parties to the EAPA proceedings have exhausted all other administrative and legal remedies."  *Id.*  Kingtom notes that it reported sales to importers other than those subject to any EAPA proceeding, as Kingtom reported all of

its sales to the United States in its section C database. *See* Kingtom's Section C-D Response at Exhibit C-7. In other words, Commerce deferred initiation of the scope inquiry despite the fact that it was aware there are entries of Kingtom's merchandise that are not subject to any EAPA proceeding. As of the date that Kingtom files this Complaint, Commerce has neither initiated the scope inquiry nor ruled on the scope request.

24. On August 6, 2021, Commerce published in the Federal Register a notice of the preliminary results. *See Aluminum Extrusions From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Rescission of Review in Part; 2019-2020*, 86 Fed. Reg. 43,168 (August 6, 2021) ("*Preliminary Results*"). In its *Preliminary Results*, Commerce denied Kingtom a separate rate and included it in the China-wide entity. Commerce preliminarily determined, based almost exclusively upon the CBP EAPA investigations, and allegedly conflicting statements by Kingtom, that Kingtom exported subject aluminum extrusions from the Dominican Republic that are Chinese in origin, and is therefore a third-country exporter. Commerce further determined that Kingtom is not eligible for a separate rate because Kingtom did not identify a Chinese exporter upon which Commerce could apply our non-market economy calculation methodology to calculate a dumping margin.

25. On September 7, 2021, Kingtom submitted a case brief addressing the *Preliminary Results* and Commerce's determination to include Kingtom in the China-wide entity. *See* Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China, Case No. A-570-967, Case Brief of Kingtom Aluminio SRL ("Kingtom Case Brief") (Sept. 7, 2021). In its case brief, Kingtom argued that by relying almost exclusively on the CBP EAPA determinations for its conclusions in the *Preliminary Results*, Commerce had abdicated its obligation to conduct this administrative

12

review. Kingtom argued that all relevant evidence relied upon by CBP as the basis for its EAPA determinations was redacted from the public versions of the determinations placed on the record of this review. Accordingly, Kingtom argued that it had been provided no opportunity to respond to the evidence used against it, violating its right to due process. Kingtom further argued that because Commerce largely ignored the record evidence submitted by Kingtom in making its determination, it violated the substantial evidence standard. Kingtom additionally noted that Commerce's assertion that Kingtom made conflicting statements as to whether it had exports of subject merchandise is unsupported by substantial evidence. On September 16, 2021, Petitioner submitted a rebuttal brief supporting Commerce's Preliminary Results determinations.

26. On February 8, 2022, Commerce published the *Final Results*. *See Aluminum Extrusions From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2019-2020*, 87 Fed. Reg. 7,098 (February 8, 2022) ("*Final Results*") and accompanying Issues and Decision Memorandum ("IDM"). In the *Final Results* Commerce maintained its determinations from the *Preliminary Results* and continued to include Kingtom in the China-wide entity.

27. On February 8, 2022, because Commerce continued to find that its aluminum extrusions are within the scope of the Orders, Kingtom requested that Commerce implement a certification procedure pursuant to 19 C.F.R. § 351.228, similar to those that Commerce routinely grants in anti-circumvention proceedings, whereby Kingtom may continue to prospectively import aluminum extrusions that it produces in and exports from the Dominican Republic without prohibitive antidumping and countervailing duty cash deposits. *See* Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China, Case No. A-570-967: Request for the Implementation of

Certification Procedures" (Feb. 8, 2022) (on record with Kingtom's counsel) ("Kingtom Certification Request"); *see also*, *e.g.*, *Certain Cold-Rolled Steel Flat Products From the Republic of Korea: Affirmative Final Determinations of Circumvention of the Antidumping Duty and Countervailing Duty Orders* 84 Fed. Reg. 70,934, 70,936 (Dep't Commerce Dec. 26, 2019). Kingtom submitted that a certification procedure is appropriate here because the facts of this case, including the EAPA determinations that Commerce selected as facts available, indisputably demonstrate that Kingtom produces at least some aluminum extrusions in, and exports them from, the Dominican Republic. Kingtom Certification Request at 2-3; Petitioner's Entry Information Comments at Exhibit 1, Exhibit 3 ("Evidence on the record shows that Kingtom was able to produce aluminum extrusions in the Dominican Republic."). Kingtom also explained that its business is overwhelmingly in the United States and that the combined antidumping and countervailing duties threaten Kingtom's solvency.

28. On February 24, 2022, Commerce rejected Kingtom's Certification Request as an untimely submission because the record of the administrative review was closed. *See* Letter from Erin Kearney, Program Manager for AD/CVD Operations Office VI to Kingtom Aluminio, SRL, "Administrative Review of the Antidumping Duty Order on Aluminum Extrusions from the People's Republic of China, 2019-2020: Rejection of Submission" (Dep't Commerce Feb. 24, 2022).

29. On February 28, 2022, Kingtom resubmitted its Certification Request onto the still open record of the scope proceeding. Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Aluminum Extrusions from the People's Republic of China, Case Nos. A-570-967 and C-570-968: Request for Certification Procedure Implementation," (Feb. 24, 2022). Kingtom notes that its Certification Request informed Commerce that there are entries of Kingtom's

aluminum extrusions not covered by any EAPA investigation. Kingtom Certification Request at 3.

30. On March 3, 2022, Commerce deferred consideration of Kingtom's Certification Request "until such time as there are entries not subject to EAPA proceedings or until the parties to the EAPA proceedings have exhausted all other administrative and legal remedies." Memorandum from Mark Flessner, Int'l Trade Compliance Analyst for AD/CVD Operations Office VI to The File, "Aluminum Extrusions from the People's Republic of China: Request for Certification Process" (Dep't Commerce March 3, 2022).

## STATEMENT OF CLAIMS

31. Commerce's *Final Results* are unsupported by substantial evidence and are otherwise not in accordance with law in the following respects:

## COUNT I

32. Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

33. In its *Final Results*, Commerce made the determination that Kingtom had exports of subject merchandise based almost exclusively on CBP EAPA investigations, wherein CBP determined based on adverse facts available ("AFA") that Kingtom had exports of subject merchandise. *See* Final Results and accompanying Issues and Decision Memorandum at Comment 1.

34. Commerce's virtually complete reliance on the AFA CBP EAPA determinations is an abdication of its legal responsibility to conduct this administrative review. Commerce is legally obligated under the Statute to conduct administrative reviews of AD orders. Further, Commerce is obligated to make its determination based on the entirety of the record evidence of the administrative review. By making its determination based only on the CBP EAPA

15

determinations while ignoring the vast majority of submitted evidence, Commerce's *Final Results* are unsupported by substantial record evidence and contrary to law.

## COUNT II

35. Paragraphs 1 through 34 of this Complaint are incorporated herein by reference.

36. Commerce's *Final Determination* that Kingtom had shipments of subject merchandise, based almost exclusively on the public versions of EAPA investigation determinations put on the record of this review, is a violation of due process. As described above, in its *Final Results*, Commerce relied almost completely on the CBP EAPA investigations. The sole evidence of the CBP EAPA investigations determinations put on the record of this review are public versions of the determinations. Neither Kingtom nor Kingtom's counsel were able to confront the evidence in its entirety, as critical data and other information upon which the EAPA determinations were based has been redacted from these public versions.

## COUNT III

37. Paragraphs 1 through 36 of this Complaint are incorporated herein by reference.

38. Commerce's virtually complete reliance on the AFA CBP EAPA determinations is a violation of the substantial evidence standard. The Act requires that Commerce's decisions must be supported by substantial evidence. *See* section 1516A(b)(1)(B)(i) of the Tarrif Act of 1930. This requires Commerce to evaluate fully all record evidence, including contradictory evidence. Because it made its *Final Determination* based almost exclusively on the CBP EAPA investigation determinations, and ignored the bulk of the evidence submitted by Kingtom, Commerce's determination is not supported by substantial evidence.

## COUNT IV

39. Paragraphs 1 through 38 of this Complaint are incorporated herein by reference.

40. Commerce's determination that Kingtom made conflicting statements as to whether or not it had exports of subject merchandise is not supported by substantial evidence. Commerce used this determination to support its determination to deny Kingtom a separate rate. Because the record evidence clearly demonstrates the Kingtom was consistent in it reporting on this issue, Commerce's determination is unsupported by substantial evidence.

## COUNT V

41. Paragraphs 1 through 40 of this Complaint are incorporated herein by reference.

42. Commerce's determination to deny Kingtom a separate rate, even if it did have exports of subject merchandise from China as a third-country exporter, is unsupported by substantial evidence and contrary to law. Commerce regularly gives separate rates to third country exporters and was required to do so in this administrative review when it made the determination that Kingtom had exports as a third-country exporter.

## COUNT VI

43. Paragraphs 1 through 42 of this Complaint are incorporated herein by reference.

44. Commerce's determination not to conduct the scope inquiry regarding Kingtom's aluminum extrusions in conjunction with this administrative review, and its decision to defer the scope inquiry, are unsupported by substantial evidence, an abuse of discretion, and otherwise not in accordance with law.

45. Additionally, Commerce's deferral of Kingtom's scope inquiry constitutes "agency action unlawfully withheld or unreasonably delayed" that the Court should compel pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(1).

## COUNT VII

46. Paragraphs 1 through 45 of this Complaint are incorporated herein by reference.

47. Commerce's determinations to reject and defer Kingtom's Certification Requests are unsupported by substantial evidence, an abuse of discretion, and otherwise not in accordance with law.

## PRAYER FOR RELIEF

48. For the foregoing reasons, Plaintiff respectfully requests that this Court hold Commerce's *Final Results* unsupported by substantial record evidence and otherwise not in accordance with law. Plaintiff thus respectfully requests that this Court remand the *Final Results* to Commerce to correct the errors set forth in this Complaint and provide other such relief as this Court deems appropriate.

Respectfully submitted,

**MORRIS MANNING & MARTIN LLP**
1401 Eye Street, NW, Suite 600
Washington, D.C. 20005
(202) 216-4116

/s/ Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Edward J. Thomas III
Jordan L. Fleischer
Nicholas C. Duffey

*Counsel to Plaintiff Kingtom Aluminio S.R.L.*

Dated: April 8, 2022

14197285–1